P. Craig Silva, Wyoming Bar No. 6-3066
Asst. Federal Public Defender
104 S. Wolcott, Suite 550
Casper, WY 82601
Phone: 307-772-2781
Facsimile: 307-772-2788
Email: craig_silva@fd.org

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL COLLINS GUENZEL,<br><br>Defendant. | Case No. 26-CR-005-ABJ |

**MOTION TO SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

**COMES NOW** Defendant Michael Collins Guenzel, (hereinafter "Defendant") Guenzel, by and through his attorney, Assistant Federal Public Defender, P. Craig Silva, and respectfully moves this Court for an order suppressing all evidence seized in violation of the Fourth Amendment to the United States Constitution. Defendant requests a hearing on this motion.

## I. UNDISPUTED FACTS

The Defendant is 23 years old. On December 19, 2022, a deferral order of probation pursuant to Wyo. Stat. Ann. § 7-13-301 was entered against him for

burglary in violation of Wyo. Stat. Ann. § 6-3-301(a). (Exhibit A). As part of that order Defendant was placed on community supervision for a stated term of four years and was required to comply with the rules of the probation office, including submission to searches. *Id.*

Supervision of the Defendant was assigned to Wyoming State Probation Agent Cole Verner. At the outset of supervision the defendant executed a Community Supervision Agreement on January 24, 2023 (the "Agreement"), which by its terms required the defendant to allow any supervising agent to visit his residence, place of employment, or other locations for compliance inspections and to submit his person, property, residence, vehicle and personal effects to search and seizure "with or without a search warrant". (Exhibit B, Agreement ¶ 8).

According to the probation report prepared by PA Verner, on June 30, 2025, the Laramie Police Department reported that the defendant had expressed suicidal ideation and had been unsuccessfully contacted by police. The agent attempted to meet with the Defendant on July 1, 2025; the defendant failed to appear. The agent agreed to reschedule the meeting for later that day, but the Defendant again failed to report. After speaking with the defendant's father, the agent learned the Defendant was reportedly traveling in Texas and attempting to travel to Florida. On July 5, 2025, the Defendant texted the agent and agreed to report on July 7, 2025; the defendant appeared at the probation office on that date. (Exhibit C).

PA Verner counts that upon the Defendant's appearance on July 7, 2025, the agent seized the Defendant's phone based on an asserted investigation into the

defendant's alleged leaving the State of Wyoming without permission. The Defendant told the agent that a warrant was required to search the phone. *Id.* The Agent reviewed the defendant's signed Agreement, relied on Condition No. 8, and proceeded to search the device without a warrant. During the search the agents inspected the photo gallery for location- or date-stamped images but initially located no issues. While searching, the agent observed a Snapchat notification, opened the Snapchat application, and was placed into a chat thread with a female who was location-stamped at "West Hammond, New Mexico." The agent, along with another agent located several videos and images of what they described as lewd content exchanged between the female and the Defendant and suspected the female might be a minor. PA Verner contacted the Laramie Police Department to report these findings (Exhibit C).

A Laramie police officer responded to the probation office. (Exhibit D). The officer's body-worn camera footage corroborates aspects of PA Verner's account and indicates the officers and agents initially had difficulty locating Snapchat on the device because the icon was unfamiliar to the probation agent. (Exhibit E, 00:00-4:40). The Defendant told PA Verner that his earlier absences were caused by travel to Jackson, Wyoming. Probationers, with exception of sex offenders, can travel in the state without permission of their probation officer.

On September 8, 2025, the Laramie Police Department relied solely on the information obtained from July 7, 2025, probation office search of the defendant's cell phone as the basis for a warrant to search the phone. (Exhibit F, p. 7 ¶ 3). The

evidence obtained from that phone search was subsequently used to obtain additional warrants; for example, on September 25, 2025, the Division of Criminal Investigation obtained a search warrant for the defendant's apartment, a 1998 green Honda registered to him, and a Samsung Galaxy Notebook 9. (Exhibit G). And in October 2025, a warrant was obtained for the defendant's AT&T Wireless records, Snapchat records, TikTok records, Red Apple Cell Phone, and any other electronic devices searched. (Exhibits H, I, J, and K).

Collectively, these facts show that the probation department seized and searched the defendant's phone on July 7, 2025 pursuant to a probation condition in the Agreement, that law enforcement was alerted to material found during that probationary search, and that law enforcement later relied on the results of the probationary search as the sole factual basis for a warrant executed on September 8, 2025 and for subsequent warrants for the Defendant's residence, vehicle, and wireless records. (Exhibits F-K).

## II. ARGUMENT

**WHETHER UNDER THE TOTALITY OF THE CIRCUMSTANCES THE SEARCH OF DEFENDANT'S CELL PHONE WAS UNREASONABLE AND A VIOLATION OF DEFENDANT'S FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION**

### A. Standard of Review:

The ultimate touchstone of the Fourth Amendment is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Cell phones provide access to an immense array of private information, much of which is stored in the Cloud or on sites controlled by third parties. As such, the United States Supreme Court concluded

in *Riley v. California* that people have a uniquely broad expectation of privacy in cell phones and, therefore, a warrant is generally required to search them. 573 U.S. 373, 393-94 (2014).

Although, "the defendant bears the burden of proving whether and when the Fourth Amendment was implicated," *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017), "[t]he government then bears the burden of proving that its warrantless actions were justified by an exception," *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994). Warrantless searches and seizures are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established exceptions. *United States v. Neugin,* 958 F.3d 924, 930 (10th Cir. 2020). Searches and seizures must be reasonable at their inception. *United States v. Shrum,* 908 F.3d 1219, 1230 (10th Cir. 2018). They must also be reasonable in their scope and manner of execution. *United States v. Muhtorov,* 20 F.4th 558, 593 (10th 2021). If the government establishes that an exception to the warrant requirement applies, the search is constitutional. *United States v. Maestas*, 2 F.3d 1485, 1491-92 (10th Cir. 1993).

Warrantless searches of probationers, and their property are evaluated under the general Fourth Amendment approach of examining the totality of the circumstances, including the diminished privacy interests during probation. *Griffin v. Wisconsin*, 483 U.S. 868 (1987); *United States v. Knights*, 534 U.S. 112, 120-122 (2001); and *Samson v. California*, 547 U.S. 843, 848 (2006). Since the search of Defendant's cell phone was executed without a warrant, the government bears the

burden of proving by a preponderance of evidence that the search was reasonable. *United States v. Dixon,* 137 F.4th 592, 605 (7th Cir. 2025).

**B. Unreasonable Search/Totality of the Circumstances:**

This exact issue was raised favorably for this Defendant in this case, of *United States v. Lara,* 815 F.3d 605 (9th Cir. 2016). In *Lara,* that defendant Paulo Lara pleaded guilty to drug trafficking felonies and received probation; his plea/advisement form included a broad probation search condition. The condition required the probationer to "submit your person and property including any residence, premises, container, or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer with or without a warrant, probable cause or reasonable suspicion." *Id.* Probation officers visited a residence to verify Lara's whereabouts. Probation Officer Ortiz observed a cell phone on a coffee table, asked Lara whether it was his, and Lara confirmed it belonged to him. *Id.* Probation Officer Ortiz then examined the phone while Lara sat nearby and found text messages and photographs that included pictures of a semiautomatic handgun and messages discussing selling it. Probation Officers arrested Lara. *Id.* The phone was taken to the Orange County Task Force Crime Lab; where data was downloaded and GPS metadata tied the gun photographs to an address belonging to Lara's parents. Probation officers went to that parental residence, obtained consent from Lara's mother Rosa to enter and search, and found the 9mm handgun in a closet. *Id.* Mr. Lara moved to suppress the phone data and the gun as fruit of an unlawful search.

The Ninth Circuit Court of Appeals held that the warrantless search of the defendant's cellular telephone was unreasonable under the Fourth Amendment. *Id.*

*Lara's* analysis directly bears on probation's search of the Defendant's cell phone. Under the totality of the circumstances, a cell phone implicates a heightened privacy interest distinct from searches of a person, a vehicle, or even a home. As the Supreme Court explained in *Riley*, cell phones are not ordinary items of personal property: "Cell phones, however, place vast quantities of personal information literally in the hands of individuals." *Riley*, 573 U.S. at 386. The High Court emphasized that the label "cell phone" is misleading shorthand; many devices are effectively minicomputers that function as cameras, address books, calendars, libraries, diaries, and more, and they possess enormous storage capacity. *Id.* at 393. Before cell phones, searches were constrained by physical realities and generally constituted only a narrow intrusion on privacy of a person's body, vehicle, or home. *Id.* By contrast, a modern cell phone — roughly the size of a candy bar — can contain a year's worth of mail, years of photographs, browsing and search histories, reading and media consumption records, location data, communications, and other intensely personal records. A search of a phone therefore routinely reveals far more intimate and comprehensive information than most exhaustive searches of a home or vehicle and often uncovers categories of information that would not be present in a home at all. *Lara*, at 611. (addressing analogous privacy concerns). Given this reality, the Defendant in this case possesses a substantially heightened expectation of privacy in the contents of his cell phone, and any governmental search of that device by

probation must be evaluated with that heightened privacy interest in mind.

This heightened expectation of privacy is not eliminated because the Defendant is on state probation. The Supreme Court has recognized that a probationer's privacy interest is greater than a parolee's. *Sampson v. California*, 547 U.S. 843, 850 (2006). Courts have also found that an individual's expectation of privacy is greater where the underlying offense is not serious. *United States v. King*, 736 F.3d 805, 809 (9th Cir. 2013). Therefore, probationers do not entirely forfeit their Fourth Amendment rights upon being placed on probation; there are limits to the price the government may exact in return for granting probation. *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 261 (9th Cir. 1975). Thus, while the Defendant's expectation of privacy is somewhat diminished by probation and by the underlying burglary conviction, it is not reduced to the level of a parolee's and remains greater than no expectation at all. Especially, where the infraction that provision is attempting to investigate is not a crime, but merely a minor violation of the term of probation by traveling outside the state of Wyoming without permission.

The lack of reasonableness of this search is underscored by the ambiguity of the probation search provisions. The *Order's* blanket phrase "submission to any searches" (Exhibit. A) and the Agreement's requirement that Defendant ". . . submit his person, property, residence, vehicle and personal effects to search and seizure with or without a search warrant" (Exhibit. B, ¶ 8) do not plainly or unambiguously address modern digital devices and therefore cannot be read to authorize warrantless searches of cell phones. These two provisions fail to identify cell phones,

smartphones, other electronic communication devices, or data-storage media, and do not require at least a particularized reasonable suspicion to search; consequently they are unconstitutionally vague as applied to phone searches. Courts confronted with similar ambiguities have held that unclear probation language cannot be used to justify invasive, warrantless searches of digital devices which is best illustrated in *United States v. Fletcher,* 978 F.3d 1009 (6th Cir. 2020).

The holding in *Fletcher* is dispositive of this Defendant's case, and issues. In *Fletcher,* the Sixth Circuit held that a probation officer's warrantless search of defendant Jason Fletcher's cell phone violated the Fourth Amendment because the officer lacked reasonable suspicion and the probation terms did not clearly authorize a cell phone search. Defendant, Jason Fletcher, had been convicted previously of importuning a minor. He was placed on probation with conditions forbidding contact with minors and possession of pornography and containing a general clause consenting to searches of "person, motor vehicle, or place of residence by a Probation Officer at any time." At a routine probation office visit, the probation officer noticed Fletcher carrying two cell phones. The officer told Fletcher she was going to search the phones. Fletcher reacted nervously, said he did not remember passcodes, attempted to delete items, then used fingerprint recognition to unlock one phone. The officer viewed an image of child pornography on that phone. The officer turned the phone off, called local detective Brandi Carter, who obtained and executed a warrant to search the phone. The warrant search produced child-pornography evidence that led to federal charges (conspiracy to produce and production of child pornography).

Fletcher filed a motion to suppress the phone evidence; the district court denied it.

The Sixth Circuit Court reversed, relying on *Riley v. California*, where cell phone searches generally require a warrant because digital phones contain vast, unique private data such that warrantless searches are disfavored absent an applicable exception. The court rejected government reliance on the probation agreement's general search clause to justify a warrantless cell phone search because the terms did not clearly and unambiguously include cell phones. The search provision in *Fletcher* stated that defendant agreed to a search without warrant of his person, motor vehicle, and place of residence. The warrantless search of the cell phone under that ambiguous provision violated the Fourth Amendment. This conclusion was reached by balancing Fletcher's status as a probationer with the clarity of the conditions of probation, and the contents of a cell phone. *Id.* at 1018.

Unambiguous cell phone search provisions are common for example, in *United States v. Lujan*, ---F.Supp.3d---, 2026 WL 412726 (D. New Mexico 2026), the search provision clear covered cell phone type property when it stated: "You must submit to a search of your person, property, residence, vehicles, papers, computers . . .other electronic communications or data storage devices or media, or office under your control. *Id.* *1. The Tenth Circuit strictly enforces the language of these provisions; for example, *United States v. Freeman,* 479 F.3d 743 (10th Cir. 2007). In the *Freeman* case the Tenth Circuit reversed the district court and held that the warrantless search of parolee Freeman's residence, by law enforcement other than his parole officer, violated the Fourth Amendment because it was not authorized by

the specific terms of his parole agreement and lacked reasonable suspicion. Factually, law enforcement officers accompanied a private parole-monitoring representative to Freeman's home for a curfew/ankle-bracelet check, announced an intent to search, and—after Freeman became agitated and left the bedroom—conducted a bedroom search that uncovered a firearm. Legally, the court emphasized enforcement of the parole agreement's search-limiting language and the Kansas parole policies (IMPP): those rules permit more extensive, warrantless searches only by Special Enforcement Officers (SEOs) or under a parole officer search provision; ordinary police officers may not rely on *Griffin/Samson* to conduct broad warrantless searches absent either (1) a parole agreement provision authorizing such searches by non-parole officers or (2) individualized reasonable suspicion of parole violation. In *Freeman* no SEO or parole officer directed or performed the search, Freeman's parole agreement did not authorize the police entry, and the officers lacked reasonable suspicion at the time they expanded the search, the search exceeded the scope allowed by the agreement and under the *Griffin/Knights/Samson* line of cases was unconstitutional.

The unconstitutionality of this search and ambiguity of the search provision is magnified here, like so many defendants in the above cited cases, when the probation officer, Mr. Verner is met with resistance, when Defendant said, "You cannot search my phone without a warrant." (Exhibit C). Cell phone data, as recognized in *Lara,* differs from ordinary tangible property or "personal effects" in several constitutionally significant ways, consequently, search provisions must address it separately and with greater particularity. *Lara*, at 611. For example, cell phone data

is massive and has qualitative difference in scope, a single device can store vast amounts of personal information—communications, photos, browsing history, location logs, financial records, health data—far beyond what a typical physical container holds, making blanket consent to "property" searches unacceptably broad. *Riley v. California*, 573 U.S. 373, 386 (2014). For these reasons, probation/parole search clauses that do not expressly identify "cell phones, smartphones, other electronic communication devices, and data storage/media" and that do not impose at least particularized reasonable suspicion limits cannot be construed to authorize the invasive, warrantless examination of digital devices.

The last point to be made here regarding the unreasonable nature of the search of Defendant's cell phone is that probation has limits to the places where they can search. There must be a nexus between the violation and place to be searched. In other words, to justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). Probation does not have a license to rummage through probationers' personal property in the hope of finding incriminating materials. The probation officer already knew that the Defendant had traveled outside of the State and did not need to search the phone. Nevertheless, in this instance the probation officer was attempting to locate first, photos, from Defendant's phone for date and time showing he traveled outside the State of Wyoming. The probation officer found nothing incriminating. Then a Snapchat came up, but nothing from the upcoming Snapchat prompt would indicate to probation officer or did indicate that Defendant

had traveled outside the State. At that point, the probation officer should have stopped the search since he found no evidence at that point that Defendant had traveled outside the state. The probation officer should have never opened the Snapchat notification. This is especially true when the probation officer went to the Snapchat app and searched. He was not only searching the phone but was also on the Snapchat server without a warrant.

The probation officer's actions went beyond the scope of any permissible search. Snapchat's interface does not display a sender's location in summary view; a user must open the app or a specific Snap to retrieve content, and doing so typically requests content stored on Snapchat's servers rather than revealing a location solely from the device's local files.[1] Thus, opening Snapchat and viewing retrieved content is effectively accessing information on a third-party server without a warrant.

In assessing the reasonableness of a search conducted pursuant to a search provision in a probation agreement the court must balance on one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests. *Knights*, 35 U.S. at 119 (*quoting Wyoming v. Houghton,* 526 U.S. 295 (1999). Probationary searches advance at least two related government interests: combating recidivism and helping probationers integrate back into the community. *Lara*, at 612, *Samson*, at 849, and *Knights,* at 120-121.

[1] https://help.snapchat.com/hc/en-us/articles/701235401524-When-I-save-a-Snap-in-Chat-where-is-it-stored.

Balancing the intrusion against the government's interests, the scales tip decisively in favor of the Defendant's privacy because: (1) the search invaded the uniquely expansive and intimate informational privacy interests protected by *Riley*—accessing communications, location data, photos, and cloud-synced content far beyond any ordinary property search; (2) the probation terms relied on were vague and did not clearly, unambiguously, or narrowly authorize searches of cell phones or cloud-stored data, so the officer could not permissibly treat a modern smartphone as covered "property" or "personal effects"; (3) the probationer's privacy is diminished but not extinguished—he retains substantial Fourth Amendment protections, particularly where the underlying offense and the alleged probation infraction (an out-of-state trip) are minor and unrelated to the kinds of serious public-safety risks that might justify broader intrusion; (4) the government offered no individualized reasonable suspicion linking the phone's contents to criminal activity or to evidence that would reasonably be expected to be found on the device for the specific alleged violation; (5) the officer's search exceeded any permissible scope by moving from local phone photos to server-retrieved Snapchat content—effectively querying third-party servers without a warrant or lawful consent, implicating *Riley* and third-party/cloud privacy concerns; (6) the search involved highly intrusive examination over the Defendant's objection and potential compelled access to passcodes/biometrics and third-party data, burdensome means not justified by the minimal governmental need asserted; (7) less intrusive alternatives existed (seek a warrant, or request targeted disclosure from the provider) but were not pursued; (8) permitting such warrantless,

exploratory searches would eviscerate the heightened privacy protections courts have recognized for digital devices and create a broad, untethered authority for probation officers to rummage through probationally supervised persons' most intimate records; and (9) the marginal governmental interests in supervising probationers and verifying compliance with travel conditions are outweighed by the substantial and uniquely invasive privacy costs of warrantless cell phone search, especially where the alleged violation did not implicate public safety or present an exigency justifying bypassing the warrant process—therefore, under the totality of the circumstances the privacy interests prevail and the search was unreasonable.

**C. Fruit of the Poisonous Tree:**

All the evidence from the Defendant's cell phone, Samsung tablet, Snapchat, and other searches pursuant to warrants need to be suppressed in this case, because all evidence obtained emanates from this unreasonable search in violation of the Fourth Amendment. A defendant may move to suppress evidence that is "fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 484-488 (1963). The first step is to show that the Defendant's Fourth Amendment rights were violated. *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006). Then he must show a factual nexus between illegality and the challenged evidence. *Id.* For a defendant to meet his burden of showing a factual nexus he must at a minimum. . .adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct.

The burden has been met here by the Defendant. The probation department:

1) Seized and searched the defendant's cell phone on July 7, 2025 pursuant to a probation condition in the Agreement; 2) That law enforcement was alerted to material found during that probationary search; and 3), That law enforcement later relied on the results of the probationary search as the sole factual basis for a warrant executed on September 8, 2025, and for subsequent warrants for the defendant's residence, vehicle, and wireless records. (Exhibits D–H). A review of those warrants shows that without the paragraph regarding the probationary search there is no probable cause for those warrants. Therefore, any evidence obtained through those warrants is the fruit of the poisonous tree.

## III. CONCLUSION[2]

For the foregoing reasons, under the totality of the circumstances the warrantless, unreasonable exploratory search of the Defendant's cell phone exceeded the bounds of a permissible probation search, thus, violated the Fourth Amendment, and cannot be justified by the vague search provisions relied upon by probation. Law enforcement's subsequent warrants and investigations were premised entirely on the results of that unconstitutional search, all evidence derived from the July 7, 2025 cell phone search — including the September 8, 2025 warrant and all evidence obtained

[2] A case holding against the Defendant in this case is *United States v. Dixon,* 137 F.4th 592, 606-607 (7th Cir. 2025)(upheld search of probationer's cell phone but is distinguishable from this case because the search condition which specifically allowed for the search of electronic communications or data storage devices. . ."). Another case, from the Seventh Circuit is *United States v. Wood,* 16 F.4th 529 (7th Cir. 2021) allowed for a warrantless search of a parolee's cell phone by law enforcement. The Wood cases is completely contrary to *California v. Riley*, and several cases cited above from the 10th Circuit Court of Appeals. *See also United States v. Jackson,* 866 F.3d 982 (8th Cir. 2017) and *United States v. Lajeunesse,* 85 F.4th 679 (2nd Cir. 2023).

pursuant thereto and by later warrants (Exhibits F–K) — is the fruit of the poisonous tree and must be suppressed.

**WHEREFORE**, the Defendant respectfully moves this Court to grant his motion to suppress all evidence obtained directly or indirectly from the July 7, 2025 warrantless search of his cell phone, to exclude any derivative evidence seized pursuant to warrants issued on the basis of that search, and for such other and further relief as the Court deems just and proper, including dismissal of any charges that cannot be proven without the suppressed evidence.

**DATED** this 28th day of April 2026.

Respectfully submitted,
TRACY R. HUCKE
Federal Public Defender

*/s/ P. Craig Silva*
P. Craig Silva
Assistant Federal Public Defender

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2026 the foregoing was electronically filed and consequently served on counsel of record.

*/s/ P. Craig Silva*
P. Craig Silva