Mackenzie R. Morrison, Bar No. 8-6516
Assistant United States Attorneys
District of Wyoming
P.O. Box 22211
Casper, WY 82602
(307) 261-5434
mackenzie.morrison@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br>**v.**<br><br>**MICHAEL COLLINS GUENZEL,**<br><br>Defendant. | **Criminal No: 26-CR-05-J** |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

**COMES NOW**, the United States of America, by and through Assistant United States Attorney Mackenzie R. Morrison, offers the following response to the *Defendant's Motion to Suppress Evidence*. (ECF 23). As explained below, the United States respectfully requests the Court deny the Defendant's motion.

## RELEVANT FACTS

On December 19, 2022, the Defendant was placed on probation for a period of four years in state court following a guilty plea to burglary. (Exhibit 1). The order of probation included a condition that he "shall remain law abiding at all times and shall violate no federal law, or the laws of any state or political subdivision of the same." (*Id.* at 3). Additionally, the court ordered that he was to submit "to any searches and physical or biological testing whenever and wherever the same

may be requested." (*Id.*). Further, the court ordered, "Pursuant to Wyoming State 7-13-301(a)(iii), Defendant is able to leave the State of Wyoming only at the discretion of Defendant's supervising agent." (*Id.* at 4).

On January 24, 2023, Defendant met with probation and signed the community supervision agreement, which laid out his probation conditions. (Exhibit 2). Relevant here, his conditions included the following: "I will allow any supervising agent to visit my residence, place of employment, or elsewhere for compliance inspections or other matters relating to my supervision. During such contacts I will submit my person, property, place of residence, vehicle and personal effects to search and seizure with or without a search warrant." (*Id.*). He also agreed to "report for appointments with any supervising agent as directed" and that he would "follow all directives of [his] supervising agent relating to travel both inside and outside the state of Wyoming." (*Id.*). As part of being on probation, the Defendant was required to get permission from probation to leave the State. In order to obtain permission, the Defendant needed to submit a request three days prior to departing.

Defendant struggled with probation conditions throughout his time on probation. In November of 2023, he had violations for failure to follow directives. (Exhibit 3 at 1). In April of 2024, he had a violation for dishonesty with the agent as to his employment, education, and treatment. He received a two-day jail sanction. (*Id.*).

In June of 2025, Guenzel was still being supervised on state probation. His supervising agent, Cole Verner, received information from Laramie Police Department that the Defendant had suicidal ideations. (*Id.* at 4). Laramie Police tried to contact the Defendant, but could not reach him. Agent Verner contacted the Defendant and scheduled a probation meeting for July 1, 2025. (*Id.*). However, he failed to report to the meeting. The Defendant then requested to move the

meeting back two hours on that day. He then failed to report to that meeting. Agent Verner spoke with the Defendant's father who had received information that Defendant was traveling out of state. However, the Defendant had not submitted a request for travel and therefore, had not received permission to travel out of state. On July 5, 2025, Agent Verner received a text from the Defendant stating he would come to the probation office for a meeting on July 7, 2025. (*Id.*).

On July 7, 2025, the Defendant came to the probation office. Agent Verner asked the Defendant why he failed to report to the prior scheduled meetings. (Exhibit 5 at 02:45). The Defendant responded that he was in Jackson. Agent Verner confronted him saying, "That is weird, you said you were outside of Laramie." (*Id.*). Defendant responded that he was outside of Laramie. Agent Verner asked him, "Where?" The Defendant responded that he was elsewhere and that his CV axle went out on his car. Agent Verner confronted inconsistencies, saying that the Defendant had previously said his transmission fluid drained. Agent Verner seized the Defendant's phone based on the agent's belief that the Defendant left the state without permission or notice to agent Verner. (*Id.*). The agent informed the Defendant that he would be searching his phone, which was an iPhone, due to this belief. The agent viewed the photo gallery in an attempt to see if Defendant had any location or date stamped photos. The agent was familiar with Snapchat and believed there would be evidence of his location due to Snapchat having chats, photos, and location services. The agent then tapped on the Snapchat application, which opened a chat thread with a female who had a location stamp in New Mexico, later identified as the minor victim in counts one through seven and nine. In the chat thread, the agent saw several videos and photos that were lewd in nature; he noticed that the female in them did not appear to be an adult. Probation then contacted the Laramie Police Department.

Laramie Police responded to probation and parole. Officers spoke with agent Verner, who informed them about what he saw on the phone. Officer Matthew Peckerman took custody of the phone and placed it in airplane mode. On July 15, 2025, Detective Carson Schilt obtained a search warrant for the device that was seized by probation. (Exhibit 4). Subsequently, the phone was searched, whereupon law enforcement found files of child pornography. Defendant was then charged with five counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a), (e), one count of travel with intent to engage in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(a), one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1), one count of possession of child pornography – prepubescent minor in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).

## ARGUMENT

### I. The probation search of Defendant's cellphone was lawful under the special needs exception and totality of the circumstances exception to the warrant requirement.

#### a. Law

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. However, in the context of searches involving probationers or parolees, there are two exceptions to the general warrant requirement: 1) the special needs exception and 2) the totality of the circumstances exception. *United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009). And ultimately, the search must be reasonable. *Id.* (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).

Turning first to the special needs exception, this exception exists due to the nature of supervising a probationer. *Id*. (citing *Griffin,* 483 U.S. at 874). In *Griffin*, the Supreme Court acknowledged that probationers "do not enjoy the absolute liberty to which every citizen is entitled, but only … conditional liberty properly dependent on observance of special probation restrictions." *Id*. Probation terms and restrictions exist for the purpose of rehabilitation and to ensure community safety. *Id*. (citing *Griffin,* 438 U.S. at 875). Ergo, supervision of the probationer is a special need "permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id*. Accordingly, the *Griffin* Court upheld the Wisconsin probation condition that allowed a home search without a warrant as long as there were reasonable grounds to believe contraband was present. *Id*. (citing *Griffin*, 438 U.S. at 871). Additionally, warrantless probation searches that are conducted pursuant to a valid regulation governing the probationer are lawful. *Id*. (citing *Griffin*. 438 U.S. at 880). Under this exception, a probation search will satisfy the Fourth Amendment reasonableness requirement if conducted "pursuant to state law which itself satisfies the Fourth Amendment's reasonableness requirement." *United States v. Lewis*, 71 F.3d 358, 361 (10th Cir. 1995) (citing *Griffin*, 438 U.S at 873).

Turning to the second exception, the totality of the circumstances exception, this exception is predicated on two principles: "(1) the reduced (or absent) expectation of privacy that the Court would recognize for probationers and parolees and (2) the needs of law enforcement." *United States v. Mabry*, 728 F.3d 1163, 1166 (10th Cir. 2013) (citing *Warren*, 566 F.3d at 1216). The totality of the circumstances exception begins at *United States v* Knights, 534 U.S. 112 (2001). In *Knights*, the Supreme Court balanced Fourth Amendment reasonableness in the context of a probation home search. *Knights*, 534 U.S. at 118. The *Knights* court explained that the balance in determining reasonableness is the "degree to which it intrudes upon an individual's privacy" and

"the degree to which it is needed for the promotion of legitimate government interests." *Id.* at 116 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300) (1999). The defendant in that case had a probation condition where he agreed to a search of his "person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 114.

The Court found that the status of the defendant, that being as a probationer, meant that he did not "enjoy the absolute liberty" that those who are not on probation get because probation is a form of a criminal sanction. *Id.* at 119. The search condition significantly diminished his reasonable expectation of privacy. *Id.* The Court found that the government had an interest because probationers are more likely to violate the law than other individuals in society. *Id.* This is because they are more likely to recidivate. *Id.* at 120. Probationers also have an incentive to conceal any unlawful activities because they are aware they could face a probation revocation which may lead to further incarceration. *Id.* The government has an interest in the probationer completing probation successfully and integrating back into the community too. *Id.* at 120-21. The Supreme Court held that the balance requires reasonable suspicion, and no more. *Id.* at 121.

Then, in *Samson v. California*, the Supreme Court assessed whether the search of a parolee was reasonable. *Samson v. California*, 547 U.S. 843, 847 (2006). In *Samson*, the Court held that parolees have fewer expectations of privacy than probationers because being on parole is more akin to being imprisoned. *Id.* at 951. Ultimately, the Court extended the *Knights* principles, holding that a warrantless search of a parolee was lawful when the parolee signed an agreement that allowed "parole officers or other peace officers to search the parolee 'with or without a search warrant and with or without cause'" even without reasonable suspicion. *United States v. Freeman*, 479 F.3d 743, 747 (10th Cir. 2007) (quoting *Samson,* 547 U.S. at 846). However, in *Samson*, the

Court noted that many states have their own requirements for probation searches that require individualized suspicion; the Court implied that state requirements would determine constitutionality. *Id*. As such, generally, where state law authorizes the probation search, it is constitutional under the totality of the circumstances exception. *Id.* at 748; *United States v. Mathew*, 928 F.3d 968, 976 (10th Cir. 2019) (citing *Mabry*, 728 F.3d at 1167). For purposes of the totality of the circumstances analysis, the Tenth Circuit interpreted the "*Knights-Samson* line of cases as resting on the parolee's diminished expectation of privacy stemming from his own parole agreement and the state regulations applicable to his case." *Freeman*, 479 F.3d at 748.

Under Wyoming law, a warrantless probation or parole search does not violate the Fourth Amendment as long there are reasonable grounds (or reasonable suspicion) to conduct the search. *Jones v. State*, 2002 WY 35, 41 P.3d 1247 (Wyo. 2002) (citing *Nixon v. State*, 18 P.3d 631, 636 (Wyo. 2001)). This means "[t]he officer 'must be able to point to specific and articulable facts that, taken together with rational inference from those facts, reasonably warrant a belief ... that a condition of parole has been or is being violated.'" *Id*. (quoting *Nixon*, 18 P.3d at 636).

Specific to the searches and seizures of digital devices, the Tenth Circuit analyzed the seizure of a parolee's cellphone in *United States v. Pacheco*, 884 F.3d 1031 (10th Cir. 2018). In *Pacheco*, officers had a parole violation warrant for Pacheco. *Id*. at 1035. They went to Pacheco's house and tried to make contact, but he wouldn't answer the door. *Id*. at 1036. Officers received information that Pacheco was in the house and had a gun. *Id*. Officers entered the house and conducted a sweep to search for Pacheco. *Id*. They located Pacheco, who was hiding. *Id*. When they found him, he had a phone, which they seized. *Id*. Subsequently, law enforcement applied for and obtained a warrant to search the house and a warrant to search the contents of the phone. *Id*. at 1036-37. Pacheco argued that the phone was illegally seized. *Id*. at 1038. The Tenth Circuit held

the special needs exception was inapplicable in this case because a law enforcement agency not the parole officer seized the device, but analyzed it under the totality of the circumstances exception. *Id.* at 1040. The court relied on *Samson* and *Knights*. It reasoned that a parolee's expectation of privacy is "significantly diminished" and that he was more likely to violate the law than an ordinary citizen is. *Id.* at 1041 (quoting *Samson*, 547 U.S. at 849-50; *Knights*, 534 U.S. at 122). Further, for this defendant, under Kansas law he was subject to a search of his "person and person's effects, vehicle, residence, and property by a law enforcement officer based on reasonable suspicion of the person violating conditions of parole or post release supervision or RS of criminal activity." *Id.* (quoting Kan. Stat. Ann. 22-3717(k)(1)(3)). His acquiescence to the terms of the Kansas statute reduced his expectation of privacy. *Id.* The Tenth Circuit also found that officers had reasonable suspicion to believe he was engaged in criminal conduct. *Id.* Accordingly, the Tenth Circuit held that the totality of the circumstances showed the seizure was reasonable. *Id.*

Importantly, the Tenth Circuit also found there were several reasons to uphold the subsequent digital search of the phone. *Id.* at 1043. Specifically, the court held that the phone could have been searched *without* the warrant under the totality of the circumstances exception. *Id.* (emphasis added). The court stated, "It seems likely that, pursuant to the parolee totality-of-the-circumstances exemption, KCKPD officers could have searched the entirety of Pacheco's home so long as they had reasonable suspicion of criminality." *Id.* (citing *Knights*, 534 U.S. at 121). As such, the court found, "there is little reason to believe they did not possess the same authority to search the digital contents of Pacheco's phone" without the warrant. *Id.*

Similarly, in *United States v. Fiscus,* the Tenth Circuit held that probation's warrantless search of diskettes was lawful because one of the conditions of the defendant's parole was to submit to searches of his "person, residence, vehicle, or any other property under [Fiscus'] control

without a warrant[.]" *United States v.* Fiscus, 64 Fed.Appx. 157, 163 (10th Cir. 2003) (unpublished). The court found the search of the diskettes fell under defendant's "property." *Id*.

And in *United States v. Tucker*, the Tenth Circuit analyzed a search of a parolee's computer. *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002). The defendant in Tucker had a parole condition which included submitting to a search his of "person, residence, vehicle or any other property under his control" with or without a warrant and upon reasonable suspicion. *Id*. at 1195-96. In that case, the parole agent received information that the defendant was viewing child pornography and contacting a child online. *Id*. at 1196. Parole then planned to do a search of his residence with law enforcement. *Id*. They responded to his house and saw the defendant was on his computer website relating to "preteens." *Id*. A detective took control of the computer and ran software on it to see if there was evidence of child pornography, which there was. *Id*. at 1196-97. A search warrant was subsequently prepared for the computer, whereupon law enforcement found child pornography. *Id*. at 1197. Tucker argued that the search of his computer was unlawful. *Id*. However, the Tenth Circuit found that the search was lawful. *Id*. at 1202. Specifically, the court relied on his search condition, finding that it was broad and allowed parole officers to search his person, residence, vehicle or "any other property under [his] control." *Id*. "Thus, by its own terms, the parole agreement authorized a search of any of Tucker's property, including the computer." *Id*. Accordingly, the court found that the computer fell under property under his control.

**b. Analysis**

Here, the search was lawful under both the special needs exception and the totality of the circumstances exception. Under the special needs exception, a warrantless probation search is valid as long as the search was in compliance with state law requirements which are reasonable and due to the special need to ensure rehabilitation of probationers and safety of the community.

Under the totality of the circumstances exception, while the *Samson* Court held no reasonable suspicion is needed where a parolee signed an agreement that stated they were subject to warrantless searches whether or not cause was present, the Court also implied that where a search occurred in a state requiring individualized suspicion, "a suspicionless search would remain impermissible." *Freeman*, 479 F.3d at 747 (citing *Samson*, 547 U.S. at 854). Here, Wyoming law requires reasonable grounds or reasonable suspicion to conduct a search. In situations where state law requires reasonable suspicion, such as in this case, the Tenth Circuit has analyzed whether probation had reasonable suspicion *as part* of the totality of the circumstances analysis. *See generally United States v. Mabry*, 728 F.3d 1163 (10th Cir. 2013). The United States will do the same.

Beginning with the special needs exception, the search was lawful because the search condition allowing warrantless searches of Defendant's property and effects relates to the need for rehabilitation and safety to the community and also because the search complied with state law, which requires reasonable suspicion. The specific condition at issue in this case stated that he would submit his "person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer."

First and foremost, the condition covers submitting to a search of his cellphone. The Defendant's probation condition included a search of his "property" and "personal effects." These specific terms are included in addition to the already clear terms that he agreed to submit to a search of his person, place of residence, and vehicle. Because the conditions is clear as to what the search condition covers, it speaks to the Defendant's reduced expectation of privacy. And, the condition conforms to the language of the Fourth Amendment, almost down to each word. The

Fourth Amendment applies to searches and seizures of "persons, houses, papers, and effects." To argue that a cellphone is neither property nor an effect, would mean that the Fourth Amendment protections do not apply to the Defendant's cellphone. This is not so. See *Riley v. California*, 573 U.S. 373 (2014). Accordingly, the language of the search condition clearly encompassed a search of the Defendant's cellphone. See *Pacheco*, 884 F.3d at 1041, 1043; See also *Tucker*, 305 F.3d 1202.

Second, the fact that the Defendant was on probation and not parole does not render search unlawful. In *Knights*, a *probation* search case, the Supreme Court held that probationers do not "enjoy the absolute liberty to which every citizen is entitled." *Knights*, 534 U.S. at 119. The Defendant in this case, as a probationer, had a reduced expectation of privacy. *Id*. at 120. This is because probation is a form of criminal sanction following a conviction. *Id*. at 119. The *Knights* case tells us that probation searches are lawful when supported by reasonable suspicion. Defendant conflates *Knights* and *Samson*. *Samson* involved a parole search where the Supreme Court found that parolees have fewer expectations of privacy which is why they found that no reasonable suspicion was needed to conduct a search of the parolee in that case. *Samson*, 657 U.S. at 857. *Samson* did abrogate the holding in *Knights*, it extended it.

And finally, under the special needs exception, the state of Wyoming had an interest in ensuring the Defendant complied with his probation conditions. The Defendant had a condition that required permission to travel out of state. He also had a condition to report to probation as directed. The probation agent had reason to believe that the Defendant had traveled out of state without notice or permission. Agent Verner spoke with the Defendant's dad who believed that the Defendant was out of state. Then, the Defendant failed to report as requested. The probation agent then adjusted the schedule to accommodate the Defendant, and he still failed to report. At that

point, Defendant had absconded. It was not until four days later that the Defendant reached out to his probation agent and agreed to meet with him. When he did report to probation, the agent searched the Defendant's phone in an attempt to learn where the Defendant was during the time period that he failed to report. Such search was the means to ensure that the Defendant was in compliance and also ensure he did not recidivate.

Further, the search was supported by reasonable suspicion as required by Wyoming law and therefore, it was reasonable. When probation conducted the search, agent Verner had reasonable suspicion to believe that Guenzel violated his probation conditions. As articulated above, he had facts supporting his belief that Guenzel was out of compliance and in violation of two conditions, that being his failure to report and traveling outside of the state without permission. And when the Defendant finally responded to the probation officer on July 7, 2025, the Defendant provided inconsistent statements to Agent Verner as to his whereabouts. This further supported Agent Verner's belief that Guenzel had been out of state and in violation of his probation, noting that probationers have an incentive to conceal any unlawful activities. *Knights*, 534 U.S. at 120. The search was lawful under the special needs exception.

Turning to the totality of the circumstances exception, pursuant to *Knights*, the search was lawful under this exception because the probation search condition diminished the Defendant's expectation of privacy and because the search complied with state regulations. This exception is "predicated on general Fourth Amendment reasonableness balancing." *Pacheco*, 884 F.3d at 1040 (citing *Knights*, 534 US. at 118). Here, we balance the search of the phone with the state's legitimate interest. The Defendant was on probation and he signed the community supervision agreement, which included the search condition informing him that he would be subject to searches of his property and effects. As such, Defendant had a diminished expectation of privacy. *See*

*Mabry*, 728 F.3d at 1167; *Pacheco*, 1040-41. And, the state has an interest in supervising a probationer due to the inherent increased likelihood that they may commit future crimes. *Mabry,* 728 F.3d at 1169 (citing *Samson*, 547 U.S. at 8563).

Additionally, in accordance with Wyoming law, probation had reasonable suspicion to search the phone. As articulated above, agent Verner had reasonable suspicion to believe that the Defendant was in violation of at least two probation conditions. Agent Verner searched the phone with the belief that the Defendant had traveled out of state. Therefore, the totality of the circumstances surrounding the search of the phone are reasonable under the Fourth Amendment.

Defendant asserts that the probation agent's actions went beyond the scope of a permissible search, but this argument fails. Snapchat is a social media application that allows individuals worldwide to communicate with other Snapchat users. Snapchat users can send text messages to others using the "Chat" feature. The Chat feature allows Snapchat users to type messages, send photos, videos, audio notes, and video notes to other Snapchat users. Snapchat users can also create "stories." "Stories" are a collection of user-submitted Snaps from different locations and events. A Snapchat user may also turn on location services. A user with the location services of their device turned on can share their location with others.

In this case, Agent Verner looked at the gallery to try to locate a location stamped photo. With iPhones, which is what the Defendant had, if location services are turned on for the camera application, the location is saved every time a photo is taken. However, when Agent Verner looked in the gallery application, he did not locate anything of concern. A social media application, like Snapchat (which has chats, photos, and location information) would have evidence of a person's location. The probation agent knew this. As such, the probations officer's actions were tied to his belief that the Defendant had left the state, in violation of his probation.

Additionally, Defendant cites to *United States v. Fletcher*, 978 F.3d 1009 (6th Cir. 2020) in support of his argument. However, in *Fletcher*, the probation condition stated that defendant agreed to submit to a "search without a warrant of [his] person, [his] motor vehicle or [his] place of residence by a probation officer at any time." *Id*. at 1013. This condition *did not* include personal property nor personal effects. The facts before this court are distinguishable to those in *Fletcher*. Further, the Tenth Circuit precedent guides us on this issue as articulated above. Defendant also cites *United States v. Lara*, 815 F.3d 605 (9th Cir. 2019). In that case, the defendant had a probation condition which required the defendant to "submit his person and property, including any residence, premises, container or vehicle under [his] control." *Id.* at 607. Again, the conditions are not comparable to the facts of the case at bar. Here, the conditions are much clearer. Further, in *Lara*, the Ninth Circuit found that the only governmental interest was that the defendant missed a meeting with his probation officer. *Id*. at 612. That fact is also distinguishable. So not only was the probation search condition different in *Lara*, but the basis for the search is also distinguishable. In light of the facts of this case and the law in the Tenth Circuit, neither case supports their argument.

**II. Law enforcement relied on the search warrant to search the phone in good faith.**

One additional exception to the warrant requirement is the good faith exception. When law enforcement acts in "objectively reasonable reliance" on a search warrant, the exclusionary rule is not applied. *Pacheco*, 884 F.3d at 1046 (quoting *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017)). "The rationale behind this exception is that when an officer acts in good faith reliance on a search warrant, the deterrence rationale of the exclusionary rule is no longer applicable." *Id*. Here, the warrant was authorized by an Albany County judge. The affidavit was supported by probable cause. It specifically included the facts learned from probation. It is only when the officer's "reliable on that warrant is 'wholly unwarranted' that good faith is absent." *Id*.

(quoting *United States v. Harrison*, 566 F.3d 1254, 1256 (10th Cir. 2009)). That is not the scenario before this court. Detective Schilt relied on the warrant in good faith; there is no bad conduct to deter here. The good faith exception applies.

**CONCLUSION**

Defendant has not raised any disputed issues of material fact. As such, the United States contends this court can deny this motion without proceeding to an evidentiary hearing. *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995).

**WHEREFORE**, the United States respectfully requests the court deny the Defendant's motion.

**DATED** this 12th day of May, 2026.

DARIN D. SMITH
United States Attorney

By: */s/ Mackenzie R. Morrison*
MACKENZIE R. MORRISON
Assistant United States Attorney

Attachments:
- Exhibit 1: Order of Probation
- Exhibit 2: CSA Agreement
- Exhibit 3: Staffing Report
- Exhibit 4: Search Warrant
- Exhibit 5: Body Camera – This will be provided separately to the court.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of May, 2026, the foregoing was electronically filed and consequently served on defense counsel.

*/s/ Mackenzie R. Morrison*
UNITED STATES ATTORNEY'S OFFICE