# EXHIBIT B

# RMCF

Rocky Mountain Computer Forensics

May 21, 2026

Federal Defender's Office of Wyoming
104 South Wolcott Street, Suite 550
Casper, WY 82601

Reference: USA v Guenzel, 2:26-cr-00005-ABJ

Dear Mr. Craig Silva,

Rocky Mountain Computer Forensics (RMCF) was retained to review relevant documents (discovery) and provide an expert opinion. I was in law enforcement for 17 years; 10 years as a detective specializing in computer forensics and computer crimes. I have been a consultant since retiring from law enforcement in October of 2014.

I am a court qualified expert in cellular technology, call detail records (CDRs) analysis and digital forensics to include cell phone forensics. I have examined numerous cell phones and other digital devices.

While a detective I investigated hundreds of major criminal cases to include sexual exploitation of a child, burglaries, robberies, sex assaults, and homicides. I have written hundreds of warrants and testified many times as an expert witness in district and federal court, A detailed CV is included.

My opinions are based on my training; years of experience with cellular technology and digital forensics, and many criminal investigations.

If you have any questions feel free to contact me.

Sincerely,

Mark Pfoff

Mark Pfoff
RMCF



Exhibit B

**Background Information**

I was contacted by Mr. Craig Silva with the Federal Public Defender's office in Wyoming and asked to review a motion to suppress and supporting exhibits.

**Documents reviewed for report**

I reviewed a motion to suppress authored by Mr. Craig Silva and Eleven (11) exhibits. These exhibits included reports, search warrants, body cam video, and other relevant documents. I also reviewed the government's response to the motion to suppress.

Being present when Officer Cole Verner or other witnesses testify to the facts of this case may effect my conclusions.

**Review of exhibits and materials provided**

The material provided documents the events of July 7, 2025 and the subsequent investigation that followed. According to these documents, Officer Cole Verner with Wyoming Probation and Parole contacted Mr. Michael Guenzel at the Probation and Parole office located at 411 South 21st Street, Laramie, WY. He was assisted by Officer Peckerman with Laramie Police Department.

During Officer Verner's contact with with Mr. Guenzel (who was currently on probation) he seized his cellphone and searched it without a search warrant. According to Officer Verner's report (exhibit C), "On July 7, 2025 said Defendant appeared in the probation office and this agent seized the Defendants phone as this agent was pursing (pursuing) a search of this device due to the Defendant allegedly leaving the state without prior permission or notice provided to this agent." The report goes on to say Mr. Guenzel stated that Officer Verner, "needs a warrant to complete a search of the phone…".

Officer Verner's report states he and Froehlich searched Guenzel's cell phone and were looking for "location/date stamped photos". While conducting the search of the cell phone, a Snapchat notification was received on the device "which this agent viewed…". This indicates Officer Verner accessed the snapchat application and proceeded to search material either on a remote application server and/or downloaded to the device by the application server. This would also indicate the cell phone was not placed in Airplane mode and/or the WiFi disabled.

According to Officer Peckerman's report (exhibit D), "VERNER searched GUENZEL's cellphone and opened the Snapchat app." This confirms Officer Verner did open the Snapchat application and continued his search.

It is unclear if relevant location data could have been obtained by searching the snapchat servers as it was unknown to the officers if location services was even enabled. It would

have made more sense to access Google maps on the cell phone and see if timeline was enabled as this data is stored on the cell phone and would not be a search of Google's servers.

Officer Verner did not access Snapchat looking for location records; he accessed it after receiving a Snapchat notification message. However, in the body cam footage, when explaining "how the phone search developed" he states; "we opened the phone; couldn't find snapchat…" but his report clearly states he was reviewing the photo gallery when the snapchat notification was received.

Based on Officer Verner's report, knowing he was accessing an application and not just material on the cellphone, he continued to search inside the Snapchat application without obtaining a search warrant.

In the body cam video Officer Verner states (4m29s); "My concern is this, if he's (in) snapchat he has the ability to go login on a different electronic device and get rid of all that shit ASAP; so that's my concern." Clearly, Officer Verner understood the material he reviewed was not on the cell phone, but a remote server. Therefor he knew he was searching a server, not the cell phone in his possession.

Based on the review of the search warrants provided, all but two (2) referenced the initial contact with Mr. Guenzel and the search of his cell phone by Officer Verner. The other two referenced the cell phone that was seized from Mr. Guenzel.

Exhibit I is a search warrant to SNAP for material from Mr. Guenzel's account, indicating law enforcement understood the Snapchat application servers contain user data and the requirement for a search warrant.

**Expert Opinion**

Officer Verner seized and searched Mr. Guenzel's cellphone without his consent and without a search warrant. He then went beyond searching the cell phone by accessing the Snapchat servers. Based on his own statements he knew he was searching a remote server.

It appears the initial search of the cell phone attempting to obtain location data became a much wider search to obtain incriminating evidence either on the cell phone or remote servers.

When the cell phone was originally seized it was not placed in Airplane mode and the WiFi device was not disabled. This allowed Officer Verner's search to go beyond the cell phone and access corporate servers potentially located in other states. This clearly

constitutes a search of more than just the physical cell phone in Officer Verner's possession.

Officer Verner's training and experience, as it relates to seizing and searching digital evidence, specifically cell phones was not provided.

Based on the information reviewed and with no exigent circumstances; best practices would dictate the cell phone be seized, a search warrant obtained, and the device examined by a qualified individual in a forensically sound environment.